THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEAL EVAN PRICE | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 25 C 00791 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| CITY OF CHICAGO | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OPINION & ORDER**

On January 28, 2025, Plaintiff Neal Evan Price's filed a Complaint, which alleges violations of Price's civil rights under 42 U.S.C. §§ 1983, 1985, antitrust violations under 15 U.S.C. § 2, and a state law claim for intentional infliction of emotional distress against Defendant City of Chicago. (Dkt. 10). Defendant now moves to dismiss under Rule 12(b)(6). (Dkt. 32). For the following reasons, the Court grants Defendant's Motion [31].

**BACKGROUND**

Price's lawsuit concerns the City of Chicago's Transportation Network Provider ("TNP")—a city ordinance concerning rideshare companies and the drivers who work for them. We begin with a brief overview of the TNP, then turn to Price's allegations.

I. The Transportation Network Provider Ordinance

The City of Chicago TNP Ordinance establishes a licensing and regulatory framework for the rideshare industry. *See* MCC § 9-115-020 Companies like Uber and Lyft must obtain a TNP license to operate in the City. *See Id.* TNP drivers are required to have a transportation network chauffeur license. *See id.* § 9-115-150. Rideshare companies (also called TNP licensees) apply for

1

transportation network chauffeur licenses on a driver's behalf, attesting that the driver is eligible for a license under the TNP Ordinance and Illinois law. *See id.* § 9-115-150(b)(4). The companies must provide training, perform criminal background checks, and obtain applicants' driving records. *See id.* § 9-115-150(b)(1)(iv), (4).

Rideshare companies and their drivers are subject to the TNP Rules, promulgated by the Business Affairs and Consumer Protection. *See* Chicago Business Affairs and Consumer Protection, Transportation Network Providers Rules, Aug. 10, 2020[1] (hereinafter TNP Rules). Rule TNP1.10 provides:

> a. TNP licensee must have in place a process to notify and report to the Department the name, associated driver's license number, associated vehicle identification number, and vehicle license plate of an affiliated transportation network driver permanently deactivated from the TNP's platform for conduct that gave rise to a public safety concern, including any of the following reasons:
>
>> 1. Criminal complaint or arrest;
>> 2. Criminal investigation;
>> 3. Allegation or complaint of sexual misconduct;
>> 4. Allegation or complaint of traffic accident or incident that resulted in a police report or insurance claim being filed;
>> 5. Allegation or complaint of use or possession of an illegal drug or substance;
>> 6. Allegation or complaint of driving under the influence of intoxicating beverages, drugs, or substances;
>> 7. Allegation or complaint of assault or battery;
>> 8. Unauthorized TNP driver account sharing;
>> 9. Use of fraudulent information or documents during TNP driver onboarding process, including, but not limited to, identify theft; or
>> 10. Conduct that gave rise to a public safety concern not itemized above in this section.
>
> b. TNP licensee must notify the Department within four business days of deactivating a driver for the reasons specified in this

---

[1] The TNP Rules can be accessed at
https://www.chicago.gov/content/dam/city/depts/dol/rulesandregs/TNPRulesAmendedeff81020.pdf.

        Rule. Licensees must identify their notification method in the process plan that they submit to the Department.

    c.    TNP licensee shall submit its written notification plan during the license application process for issuance of a new or renewal TNP license. For TNP license renewal application, the TNP's written notification plan shall include TNP's review and audit of its compliance with this rule during past license term.

TNP Rule 1.10. Thus, the Rule TNP1.10 does not require TNP licensees like Uber or Lyft to deactivate drivers in response to customer complaints. *Id.*

    **II.**    **Price Loses Access to Uber and Lyft**

On January 7, 2025, Uber deactivated Price's Uber account after a rider reported Price as a "dangerous driver." (Dkt. 10 at 2). A couple of weeks later, Lyft deactivated Price's account based on the same incident report. (*Id.*) In Lyft's email to Price informing him that it was deactivating his account, Lyft indicated that it learned of the Uber report through the City of Chicago's TNP. (*Id.*) After Uber and Lyft deactivated his accounts, Price lost his ability to earn a living as a rideshare driver. (*Id.*) Price is still able to "tak[e] on paralegal side gigs" to make some money. (*Id.*) The companies' deactivations apply nationwide, preventing Price from using Lyft or Uber anywhere in the country. (*Id.*)

Price filed suit against the City of Chicago, alleging: (1), the TNP caused him to lose access to Lyft and Uber, which violates his civil rights and due process under the Fourteenth Amendment and 42 U.S.C. §§ 1983, 1985, (2) the TNP is an unlawful monopoly between competing rideshare companies under 15 U.S.C. § 2, and (3) the City intentionally inflicted emotional distress on Price by deactivating his rideshare accounts without due process, exacerbating his already fragile mental and physical state. (*Id.* at 3). The City now moves to dismiss. (Dkt. 31).

3

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

**DISCUSSION**

Price brings six claims against the City: a Monell claim, claims that the City violated his procedural and substantive due process rights under 42 U.S.C. § 1983, a conspiracy claim under 42 U.S.C. § 1985, an antitrust violation under Section 2 of the Sherman Antitrust Act, and an intentional infliction of emotion distress claim under Illinois law.

   **I.   Monell Claim**

Though Price's Complaint is sparse on detail, Price argues that the City's TNP Ordinance caused Lyft and Uber to deactivate his account after the "dangerous driver" incident, resulting in

4

his injury. (Dkt 10 at 1). To prevail on a Monell claim, a plaintiff must show that a municipal policy or custom caused the constitutional injury. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022) (citing *Monell*, 436 U.S. at 694). Further, "[f]or a Monell *claim* to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or custom demonstrates municipal fault, (i.e., deliberate indifference'); and (4) 'the municipal action was the moving force behind the federal-rights violation.' " *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (citing *Spiegel v. McClintic,* 916 F.3d 611, 617 (7th Cir. 2019) (citations modified).

    Price's claim fails because of Monell's causation requirement. Price alleges that he "was deactivated from both Uber and Lyft without due process, severely impacting his ability to earn a living." (Dkt. 10 at 2). Liberally construing Price's Complaint, the causation he alleges is as follows: the City passed the TNP policy, which requires rideshare companies to report if a driver engages in dangerous driving; and without this policy, Uber would not have reported the incident to TNP, which would not have notified Lyft, which then would not have deactivated Price's account. (*See id.*). Price's reasoning "amounts only to a showing of but-for causation, which does not suffice under Monell." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) (finding City of Chicago is not liable where plaintiff only demonstrates but-for but not actual causation); *Midwest Bank Guardian n of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (without causation, "municipal liability collapses into *respondeat superior* liability") (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). Price's gripe, therefore, is with the rideshare companies, not the City of Chicago.

5

Because Price does not allege any facts that show the City was the "moving force" behind his injuries, this claim is dismissed without prejudice. *LaPorta,* 988 F.3d at 987.

## II. Procedural Due Process Claim

Price also brings a procedural due process claim. The Fourteenth Amendment protects against the deprivation of a protected liberty interest without due process of law. U.S. Const. amend. XVI. To plead a due process claim, "a plaintiff must allege the 'deprivation of a protected interest' and 'insufficient procedural protections surrounding that deprivation.' " *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024). Thus, Price must first establish a constitutionally protected interest to properly state a claim. *See Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013) ("The threshold question in any due process challenge is whether a protected property or liberty interest actually exists."); *see also Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) ("An essential component of a procedural due process claim is a protected property or liberty interest.").

Here, Price states no "protected property or liberty interest" in his continued contractor relationship with Uber or Lyft. *Id.* at 527. Property interests "are not created by the Constitution" but by "existing rules or understandings that stem from an independent source . . . " *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Price does not point to any independent source, which provides him with a protected "liberty interest" in Uber and Lyft continuing to give him access to his account. (*See* Dkt. 10). Even if he had a protected liberty interest, the City has not deprived Price of procedural due process because it was not Price's employer. *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (holding that "[b]ecause the County, not the City, was Palka's employer, Palka cannot sue the City and its employees for depriving him of due process in

connection with the loss of his employment."). Because Price has not identified a protected property or liberty interest, Price's procedural due process claim is dismissed without prejudice.

### III. Substantive Due Process Claim

Liberally construing his Complaint, Price also claims the City violated his substantive due process. Besides its procedural component, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The danger of governmental arbitrariness is gravest, and judicial scrutiny sharpest, in the field of "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty.' " *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977) (plur.); *see also Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024). If a plaintiff cannot identify a fundamental right, the government must only provide a rational basis for its actions. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) (finding that smoking is not a fundamental right and therefore, rational basis review is the appropriate level of scrutiny to analyze a smoking ban ordinance). Moreover, the scope of substantive due process is "very limited." *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir.2007); *see also Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) ("substantive due process is not 'a blanket protection against unjustifiable interferences with property.' ") (citation omitted).

Price's substantive due process claim is premised on the City unconstitutionally preventing him from "earning a living" as a rideshare driver via the TNP. (Dkt. 10 at 2). Price's claim fails because "employment-related rights are not fundamental." *Campos v. Cook Cnty.*, 932 F.3d 972,

7

975 (7th Cir. 2019) (cleaned up); *Palka*, 623 at 453. Because the right to employment is not fundamental, rational basis review applies. Rule TNP1.10 easily survives rational basis review. Under rational basis review, a state law is constitutional even if it is unwise, improvident, or out of harmony with a particular school of thought." *Goodpaster*, 736 F.3d at 1071 (citations omitted). The law only must "bear[ ] a rational relationship to some legitimate end." *Id.* Rule TNP1.10 arguably helps ensure that the City can maintain a record of drivers whose ride share accounts have been deactivated due to various reasons, including public safety violations. Accordingly, the rule bears a rational relationship to maintaining public safety on roads—a "legitimate end." *Goodpaster*, 736 F.3d at 1071.

As the City correctly points out, even if the right to employment were fundamental, Price's claim would still fail because he does not claim the City is wholly preventing him from working; rather the City is allegedly preventing Price from working *as an Uber or Lyft driver*. (Dkt. 10 at 2). Price even states that he has "paralegal side gigs" to help him earn a living while he looks for other work. (*Id.*) Therefore, Price's claim would fail even if the right to employment were fundamental.

Price's substantive due process claim is dismissed without prejudice.

IV. **Conspiracy Claim**

Price also asserts that the City conspired with Uber and Lyft "to rip away the due process rights of drivers," in violation of 42 U.S.C. § 1985. (Dkt. 10 at 3). Section 1985(3) "provides a cause of action for persons who are victims of a conspiracy to deprive them of the 'equal protection of the laws' or 'equal privileges and immunities under the laws.' "*Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022). A plaintiff bringing a § 1985 claim must plead:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of

> the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* Additionally, the plaintiff must allege that the conspiracy targeted a specific race or class, resulting in an equal protections violation. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (holding that state a claim under § 1985(3), "racial or class-based animus" is required); *Gunawardana v. Am. Veterinary Med. Ass'n*, 2021 WL 4951697, at *3 (7th Cir. Oct. 25, 2021) (affirming district court's § 1985(3) dismissal because "[g]raduates of foreign veterinary schools are not a protected class cognizable based on race or national origin.").

Price's claim fails because he does allege a conspiracy with "racial or class-based animus." (*See* Dkt. 10); *Haskett*, 843 F.3d at 650. As the Seventh Circuit has explained, "[t]o satisfy the second element, the complaint must allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Kowalski v. Boliker*, 893 F.3d 987, 1001 (7th Cir. 2018). Price merely states: a "violation of 42 USC [§]1985 took place as Chicago, along with the rideshare companies, conspired to rip away the due process rights of drivers, specifically Price, without due process." (Dkt. 10 at 3). This does not meet the requisite standard to survive a motion to dismiss. *Chen v. Yellen*, 2022 WL 2818709, at *7 (N.D. Ill. July 19, 2022) (dismissing § 1985(3) because plaintiff "failed to allege class-based animus."). Accordingly, Price's § 1985(3) claim is dismissed, without prejudice, for failure to state a claim.

V. **Antitrust Claim**

Next, Price also claims Rule TNP1.10 violates Section 2 of the Sherman Antitrust Act. (*Id.*) Section 2 of the Sherman Act imposes liability on "[e]very person who shall monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2. To state a claim under Section 2, Price must allege that the City "(1) possesses 'monopoly power in the relevant

9

market' and (2) engages in 'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.' " *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 451 (7th Cir. 2020) (quoting *Verizon Communications, Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 407 (2004)) (citations omitted).

Price does not meet the pleading standard to state a claim under Section 2. As the City highlights, the only facts Price pleads in his Complaint pertaining to this claim are: "the TNP rule and the sharing of driver data between Uber and Lyft create an unlawful monopoly, restricting competition and violating antitrust laws." (Dkt. 10 at 3). This allegation is conclusory—it states a legal conclusion with insufficient detail for the Court to assess Price's claim. For example, for Price to have stated such a claim, he would have to start by defining the nature of the rideshare monopoly so that the Court could assess the relevant market. *See e.g. Ducere LLC v. Enbridge (U.S.) Inc.*, 2025 WL 81373, at *3 (N.D. Ill. Jan. 13, 2025) (dismissing a Section 2 claim where plaintiff fails to establish the relevant market). This would enable the Court to evaluate "the commercial realities of the industry." *Sharif Pharmacy, Inc. v. Prime Therapeutics*, LLC, 950 F.3d 911, 917 (7th Cir. 2020). Price's threadbare Complaint does not do this. The Court, therefore, dismisses Price's Section 2 claim without prejudice.[2]

### VI.    IIED Claim

Finally, Price also makes an IIED claim. To state an IIED claim under Illinois law, a plaintiff must plausibly allege: "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct

---

[2] The City also makes a state-action immunity argument in its Motion. (Dkt. 32 at 14–15). Because the Court dismisses Price's claim on the merits, it need not evaluate the City's argument.

did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 270 (2003)); *see also Schmalshof v. McDonough Cnty.*, 2025 WL 714359, at *5 (C.D. Ill. Mar. 5, 2025). The bar for IIED claims in Illinois is very high. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988) (explaining that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.").

Price's IIED claim fails because he alleges neither that the City's conduct was outrageous nor that it was intentional. For a court to consider a defendant's conduct outrageous, "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Feltmeier*, 207 Ill. 2d at 270; *see also Richards*, 869 F.3d at 567 (explaining that determining whether conduct is outrageous is a fact specific inquiry). Price's Complaint merely alleges that Uber informed the City, per the TNP Ordinance, that a customer reported Price was a "dangerous driver." (Dkt. 10 at 2). The City notified Lyft of the incident, which independently chose to deactivate Price's account. (*Id.*) According to Price, he was "blindsided by this deactivation without due process" (*Id.* at 3). This is insufficient for the Court to find the City's behavior was outrageous. The City did not even deactivate Price's accounts itself—the main reason behind Price's alleged emotional distress. This counsels against finding the City's conduct is outrageous. *Pinkston v. Bd. of Educ. of City of Chicago*, 2023 WL 6392302, at *7 (N.D. Ill. Oct. 2, 2023) (explaining that the more control a defendant has over a plaintiff, the more likely it is a court may find a defendant's conduct is outrageous). Price's failure to plead this element is sufficient to dismiss Price's IIED claim.

Even if the conduct were outrageous, Price's Complaint also does not allege that the City's conduct was intentional under Illinois law. (*See* Dkt. 10). Price alleges no facts, which suggests

11

the City knew its ordinance would cause Price severe emotional distress. *See e.g. Kane v. Loyola Univ. of Chicago*, 2024 WL 1157396, at *16 (N.D. Ill. Mar. 18, 2024) (dismissing a claim, in part, because plaintiff failed to allege facts suggesting the defendant intended or knew that there was a high likelihood that its actions would cause severe emotional distress). Because Price does not meet the pleading standard to state an IIED claim under Illinois law, this claim is also dismissed without prejudice.

## CONCLUSION

For the forgoing reasons, the Court grants the City's [31] Motion to Dismiss, with leave to refile.

_____
Virginia M. Kendall
United States District Judge

Date: June 25, 2025