THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEAL EVAN PRICE | ) | |
| | ) | |
|     *Plaintiff,* | ) | No. 25 C 791 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| | ) | |
| CITY OF CHICAGO | ) | |
| | ) | |
|     *Defendant.* | ) | |

**MEMORANDUM OPINION & ORDER**

On January 28, 2025, Plaintiff Neal Evan Price sued the City of Chicago (hereinafter "the City") alleging violations of his civil rights under 42 U.S.C. §§ 1983, 1985; antitrust violations under 15 U.S.C. § 2; and a state law claim for intentional infliction of emotional distress. (Dkt. 10). The Court dismissed Price's Original Complaint on June 25, 2025 for failure to state claims upon which relief could be granted. (Dkt. 41). On June 30, 2025, Price filed an Amended Complaint reasserting the same claims that were previously dismissed, along with additional state law claims for defamation, tortious interference with business relationships, and negligence. (Dkt. 43). The City now moves to dismiss the Amended Complaint under Rule 12(b)(6). (Dkt. 47). For the reasons below, the Court grants the City's Motion to Dismiss [47] Price's Amended Complaint without prejudice.

**BACKGROUND**

The following facts are set forth in the Amended Complaint, except where noted, which the Court accepts as true for purposes of a motion to dismiss. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013).

1

I. The Transportation Network Provider Ordinance and Rules

Price's lawsuit concerns the City's Transportation Network Provider ("TNP") Ordinance—a city ordinance regulating rideshare companies and the drivers who work for them. The TNP Ordinance establishes a licensing and regulatory framework for the rideshare industry. *See* MCC § 9-115-020 *et seq*. Rideshare companies like Uber and Lyft, referred to as "TNP licensees" in the Ordinance, must obtain a TNP license to operate in Chicago. MCC § 9-115-020. TNP licensees can only hire drivers who have a valid chauffeur license. *Id.* § 9-115-050. TNP licensees apply for a chauffeur license on a driver's behalf, attesting that the driver is eligible for a license under the TNP Ordinance and Illinois law. *Id.* § 9-115-150(b)(4). The companies must provide training, perform criminal background checks, and obtain applicants' driving records. *Id.* §§ 9-115-150(b)(1)(iv), (4).

Rideshare companies and their drivers are also subject to the TNP Rules, promulgated by the City's Department of Business Affairs and Consumer Protection (BACP). *See* Chicago Business Affairs and Consumer Protection, Transportation Network Providers Rules, Aug. 10, 2020[1] (hereinafter "TNP Rules"). TNP Rule 1.10 covers notification of deactivated drivers. *See* Rule TNP1.10. It provides:

> a. TNP licensee must have in place a process to notify and report to the Department the name, associated driver's license number, associated vehicle identification number, and vehicle license plate of an affiliated transportation network driver permanently deactivated from the TNP's platform for conduct that gave rise to a public safety concern, including any of the following reasons:
>
>> 1. Criminal complaint or arrest;
>> 2. Criminal investigation;
>> 3. Allegation or complaint of sexual misconduct;

---

[1] The TNP Rules can be accessed at
https://www.chicago.gov/content/dam/city/depts/dol/rulesandregs/TNPRulesAmendedeff81020.pdf.

> 4. Allegation or complaint of traffic accident or incident that resulted in a police report or insurance claim being filed;
> 5. Allegation or complaint of use or possession of an illegal drug or substance;
> 6. Allegation or complaint of driving under the influence of intoxicating beverages, drugs, or substances;
> 7. Allegation or complaint of assault or battery;
> 8. Unauthorized TNP driver account sharing;
> 9. Use of fraudulent information or documents during TNP driver onboarding process, including, but not limited to, identify theft; or
> 10. Conduct that gave rise to a public safety concern not itemized above in this section.
>
> b. TNP licensee must notify the Department within four business days of deactivating a driver for the reasons specified in this Rule. Licensees must identify their notification method in the process plan that they submit to the Department.
>
> c. TNP licensee shall submit its written notification plan during the license application process for issuance of a new or renewal TNP license. For TNP license renewal application, the TNP's written notification plan shall include TNP's review and audit of its compliance with this rule during past license term.

*Id*. TNP Rule 1.10 does not require TNP licensees to deactivate drivers in response to customer complaints or otherwise control how licensees handle deactivations. *Id.* Additionally, it has no requirements or prohibitions regarding communication between TNP licensees about driver deactivations. *Id.* Under TNP Rule 5.02, deactivation from a licensed TNP platform immediately suspends the driver's TNP chauffeur license. *See* Rule TNP5.02.

**II.    Price Is Deactivated by Uber and Lyft**

On January 7, 2025, Uber deactivated Price's account after a rider reported Price for "dangerous driving." (Dkt. 43 at ¶ 7). Uber did not investigate Price's account of the incident, and the allegation was not "proven true." (*Id.* at ¶ 8). Price was not found criminally or civilly liable for "dangerous driving." (*Id.* at ¶ 10). Uber had previously deactivated Price from its platform after

3

Price was accused of getting into an accident, and Price was later reactivated after challenging the allegation. (*Id.* at ¶ 9).

On January 22, 2025, Lyft deactivated Price's account after it was notified of Price's Uber deactivation. (*Id.* at ¶¶ 11-12). Price received an email from Lyft regarding his deactivation, which states:

> Pursuant to the City of Chicago's Rule TNP 1.10, Lyft was notified that you have been deactivated by other Transportation Network Provider (TNP) due to conduct that gave rise to a public safety concern. As such you are also deactivated from the Lyft platform.
>
> Lyft and other ridesharing companies are TNPs. Lyft deactivated your account due to notification from another TNP of your deactivation on their platform.
>
> Lyft does not have information about the underlying incident. If you would like more information about the reported incident, we recommend you follow up with the TNP that deactivated your account on their platform.
>
> Next steps you can take: If you would like to be considered for reactivation on the Lyft platform, please contact the TNP that deactivated your account and request reactivation on their platform.
>
> Only the TNP that initially deactivated your account is able to resolve your account deactivation. Neither the City of Chicago nor the Department of Business Affairs and Consumer Protection can assist you.

(Dkt 43, Exhibit A). Price alleges that the City shared information about Price's Uber deactivation with Lyft, which led to his Lyft deactivation. (Dkt. 43 at ¶ 15). He further asserts that the City did not notify him that it was sharing information with Lyft, provide him with an opportunity to contest the allegations, or investigate the allegations prior to sharing the information. (*Id.* at ¶¶ 16-18). The companies' deactivations apply nationwide. (*Id.* at ¶ 19). After Uber and Lyft deactivated his accounts, Price lost his ability to earn a living as a rideshare driver. (*Id.* at ¶ 20). Price's TNP license was also revoked. (*Id.* at ¶ 21).

4

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations.

## **DISCUSSION**

Price brings nine claims against the City in his Amended Complaint: claims that the City violated his procedural and substantive due process rights under 42 U.S.C. § 1983, a Monell claim, a conspiracy claim under 42 U.S.C. § 1985, an antitrust claim under Section 2 of the Sherman Antitrust Act, and four claims under Illinois law for intentional infliction of emotion distress, defamation, tortious interference with business relationships, and negligence. The Court reviewed Price's Original Complaint and dismissed it for various reasons, giving Price sufficient guidance as to the problems with his pleadings in a 12-page Opinion. (Dkt. 41). Unfortunately, despite the addition of new facts and details, the Amended Complaint suffers from the same deficiencies.

I.  **Procedural Due Process Claim**

In his Amended Complaint, Price asserts a procedural due process claim, alleging that the City facilitated the sharing of unverified allegations between rideshare companies resulting in his nationwide deactivation from Lyft, which deprived him of protected property interests without procedural protections. (Dkt. 43 at ¶¶ 23-28). The Fourteenth Amendment protects against the deprivation of a protected interest without due process of law. U.S. Const. amend. XVI. To plead a due process claim, "a plaintiff must allege the 'deprivation of a protected interest' and 'insufficient procedural protections surrounding that deprivation.'" *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024). The Court dismissed Price's procedural due process claim in the Original Complaint because Price failed to identify any protected property interest, (Dkt. 41 at 6), and the City argues that Price failed to do so again. (Dkt. 47 at 6).

Price must first establish a constitutionally protected property interest to properly state a procedural due process claim. *See Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013) ("The threshold question in any due process challenge is whether a protected property or liberty interest actually exists."). Property interests for due process purposes are "defined by existing rules or understandings that stem from an independent source such as state law." *Bell v. Cty. Of Cntry. Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). For a property interest to be constitutionally protected, plaintiffs must show that they have "a legitimate claim of entitlement" rather than a "unilateral expectation to it." *Bell*, 841 F.3d at 717 (citing *Roth*, 408 U.S. at 577). Price asserts that he has a "constitutionally protected

property interest in his ability to work as a ride share driver and his TNP license." (Dkt. 43 at ¶ 23). This is a legal conclusion, and without more, it is not sufficient.

Price argues that procedural due process protections apply to employment-related rights, (Dkt. 50 at 2), but nowhere in his pleadings does he point to any independent source that suggests that his work as a rideshare driver for private companies is constitutionally protected. Furthermore, as this Court previously explained when dismissing Price's Original Complaint, the City has not deprived Price of procedural due process because the rideshare companies, not the City, were Price's employers. *See Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010) (holding that "[b]ecause the County, not the City, was Palka's employer, Palka cannot sue the City and its employees for depriving him of due process in connection with the loss of his employment.").

Price also fails to show that his TNP license is a protected property interest. To have a legitimate claim of entitlement to a government-issued benefit, like a license, a plaintiff must show that there is a state law that creates a "system of nondiscretionary rules governing revocation or renewal of that benefit." *Chicago United Indus., Ltd. v. City of Chicago*, 669 F.3d 847, 851 (7th Cir. 2012); *see also Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) ("A property interest of constitutional magnitude exists only when the state's discretion is 'clearly limited' such that the plaintiff cannot be denied the interest 'unless specific conditions are met.'"). Price does not assert any allegations showing that the TNP Rules create a nondiscretionary system for awarding, revoking, or renewing TNP licenses.

Because Price has not identified a protected property or liberty interest, Price's procedural due process claim is dismissed without prejudice

II. **Substantive Due Process Claim**

7

Price also asserts a substantive due process claim, alleging that the City shared unverified allegations with rideshare companies resulting in his nationwide deactivation from rideshare platforms, which deprived him of his fundamental rights to pursue his occupation as a rideshare driver and to possess his TNP license. (Dkt. 43 at ¶¶ 31-33). The substantive due process component of the Fourteenth Amendment's Due Process Clause protects individuals from arbitrary action by the government. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). To state a substantiative due process claim, a plaintiff must allege that the government violated a fundamental right or liberty, and that the violation was arbitrary and irrational. *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). If a right does not qualify as fundamental, then the government action need only bear a rational relationship to a legitimate governmental interest; put differently, the action must be "neither arbitrary nor irrational." *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1000 (7th Cir. 2008). The City argues that Price's substantive due process claim must be dismissed because Price once again fails to assert a fundamental right. (Dkt. 47 at 6-7).

The Court dismissed the substantive due process claim in Price's Original Complaint because Price's asserted right to his employment was not fundamental. (Dkt. 41 at 7-8). Despite this, Price once again asserts that he has a fundamental right to "pursue his chosen occupation as a rideshare driver." (Dkt. 43 at ¶¶ 31, 33). The Court reiterates that "employment-related rights are not fundamental." *Campos*, 932 F.3d at 975 (cleaned up). Price adds an allegation that he also has a fundamental right to possess his TNP license, (Dkt. 43 at ¶ 33), but this does not save Price's claim. Maintaining a license to operate as a rideshare driver is not among the liberty rights considered fundamental. *See Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir.2012) (noting that the list of fundamental rights is includes "things like the right to marry, the

8

right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity."). Further, the Court does not consider maintaining a TNP license to be "so deeply rooted and sacrosanct that no amount of process would justify its deprivation." *Christensen v. Cnty. of Boone, IL*, 483 F.3d 454, 462 (7th Cir. 2007). Because the right to employment and the right to possess a TNP license are not fundamental, rational basis review applies. As this Court previously found, TNP Rule 1.10 survives rational basis review. (Dkt. 41 at 8). Price has not plead anything in the Amended Complaint that changes this conclusion.

Price's substantive due process claim still fails even considering his asserted interest in his TNP license as a property interest. Substantive due process claims "involving only the deprivation of a property interest are cognizable where the plaintiff shows 'either the inadequacy of state law remedies or an independent constitutional violation.'" *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) (quoting *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). As discussed above and below, Price failed to plead a protected property interest in his TNP license or an independent federal constitutional violation. Further, Price makes no argument that he does not have an adequate state law remedy. Instead, he merely asserts that Fourteenth Amendment protection was "created" when the City gave him his TNP license, (Dkt. 50 at 3), but this is another legal conclusion that is insufficient to state a claim. Accordingly, Price's substantive due process claim is dismissed without prejudice.

### III. Monell Claim

Next, Price asserts a Monell claim against the City, arguing that TNP Rule 1.10 caused him to lose his ability to work as a driver nationwide, and that the City shares the driver deactivation information with other rideshare companies causing drivers to be deactivated. (Dkt. 43 at ¶¶ 39-40, 42). To prevail on a Monell claim, a plaintiff must show that a municipal policy or custom

9

caused a constitutional injury. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022) (citing *Monell*, 436 U.S. at 694). Further, "[f]or a Monell claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced 'to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or custom demonstrates municipal fault, (i.e., deliberate indifference'); and (4) 'the municipal action was the moving force behind the federal-rights violation.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (citing *Spiegel v. McClintic,* 916 F.3d 611, 617 (7th Cir. 2019) (citations modified). The City argues that Price's Monell claim fails because no City policy caused his injury.

Even assuming Price suffered a constitutional violation, Price's claim fails because of the causation requirement. This Court dismissed Price's Monell claim in the Original Complaint after concluding that Price's allegations only showed but-for causation, which is insufficient to state a Monell claim. (Dkt. 41 at 5-6). Price makes the same allegations and arguments now, this adding an allegation that the City shared driver deactivation information with rideshare companies, causing drivers to be deactivated. (Dkt. 43 at ¶¶ 38-43). First, this allegation is contradicted by Price himself and by the evidence he submitted with his Amended Complaint. Elsewhere in the Amended Complaint, Price says that the City only "facilitated" the sharing of information between rideshare companies. (Dkt. 43 at ¶¶ 26, 59). Additionally, the email from Lyft states that Uber, not the City, informed Lyft of Price's Uber deactivation. (Dkt. 43, Exhibit A). These allegations do not plausibly suggest that the TNP Rules required or even contemplated the City sharing any deactivation information with rideshare companies.

Even if the Court accepted Price's allegations as true, they do still not create but-for causation. Liberally construing Price's Amended Complaint, the causation he now alleges is as

10

follows: the City passed the TNP Rules, which require rideshare companies to report to the City if a driver is deactivated for conduct that gave rise to a public safety concern; without this policy, Uber would not have reported Price's deactivation to the City; and, if Uber did not report the deactivation, neither Uber nor the City would have notified Lyft, which would not have deactivated Price's account. (Dkt. 43 at ¶¶ 38-43). Price's reasoning once again "amounts only to a showing of but-for causation, which does not suffice under Monell." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) (finding City of Chicago is not liable where plaintiff only demonstrates but-for but not actual causation). Price's new assertions that the City's policy was the "moving force" and direct cause of his injury are mere recitals of the elements of a Monell claim that do not cure his pleading deficiencies. (Dkt. 43 at ¶¶ 41-42).

Further, the City correctly points out that no City policy requires TNP licensees to take any action in response to notification that another licensee deactivated a driver, (Dkt. 47 at 5), and Price does not plead otherwise. Price even acknowledges that the City cannot be liable for the independent business decisions of Uber and Lyft. (Dkt. 50 at 1). Any issues Price has with the rideshare companies' decisions to deactivate him must be taken up with them, not the City.

Because Price does not allege any facts that show that the City's TNP Rules caused his injuries, this claim is dismissed without prejudice.

### IV. Conspiracy Claim

Price also asserts that the City conspired with rideshare companies through its implementation of TNP Rule 1.10 to deprive him and "a class of drivers" of their "due process rights" in violation of 42 U.S.C. § 1985. (Dkt. 43 at ¶ 46). Section 1985(3) "provides a cause of action for persons who are victims of a conspiracy to deprive them of the 'equal protection of the

11

laws' or 'equal privileges and immunities under the laws.'" *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022). A plaintiff bringing a § 1985 claim must plead:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* Additionally, the plaintiff must allege that the conspiracy targeted a specific race or class, resulting in an equal protections violation. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (holding that to state a claim under § 1985(3), "racial or class-based animus" is required); *Gunawardana v. Am. Veterinary Med. Ass'n*, 2021 WL 4951697, at *3 (7th Cir. Oct. 25, 2021) (affirming district court's § 1985(3) dismissal because "[g]raduates of foreign veterinary schools are not a protected class cognizable based on race or national origin.").

The Court dismissed Price's Section 1985 claim in his Original Complaint because Price failed to allege a conspiracy with a racial or class-based animus. (Dkt. 41 at 9). Price's new allegation that the City's supposed conspiracy targeted "a class of drivers" still does not suffice to state a claim. Rideshare drivers are not a suspect class afforded protection under Section 1985. *Grimes v. Smith*, 776 F.2d 1359, 1365 (7th Cir. 1985) (Section 1985(3) does not reach conspiracies motivated by economic or commercial concerns) (citing *United Bhd. of Carpenters & Joiners of Am. Local 610 v. Scott*, 463 U.S. 825, 837-38 (1983). There are no other facts alleged in the Amended Complaint that suggest discriminatory animus on the basis of a race or a protected class. *See Milchtein*, 42 F.4th at 828 (religious classifications likely qualify for protection under Section 1985(3); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985) ("race, ethnic origin, sex, religion and political loyalty that have previously been recognized as possibly supporting a

12

Section 1985(3) claim"). Price even admits in his reply that he can only speculate that the City's alleged conspiracy targeted "one demographic of citizens." (Dkt. 50 at 4). This does not meet the requisite standard to survive a motion to dismiss. *Chen v. Yellen*, 2022 WL 2818709, at *7 (N.D. Ill. July 19, 2022) (dismissing § 1985(3) claim because plaintiff "failed to allege class-based animus."). Accordingly, Price's § 1985(3) claim is dismissed without prejudice.

V. **Antitrust Claim**

Next, Price alleges that TNP Rule 1.10 violates Section 2 of the Sherman Act because it "facilitates an unlawful monopoly." (Dkt. 43 at ¶ 50). Section 2 of the Sherman Act imposes liability on "[e]very person who shall monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2. To state a claim under Section 2, Price must allege that the City "(1) possesses 'monopoly power in the relevant market' and (2) engages in 'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 451 (7th Cir. 2020) (quoting *Verizon Communications, Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 407 (2004)) (citations omitted). The City argues that dismissal is appropriate because Price failed to plead sufficient facts showing that the City has monopoly power. (Dkt. 457 at 9).

A plaintiff must prove the existence of a relevant commercial market before a court can evaluate whether he or she has stated a claim under Section 2 of the Sherman Act. *See Tiz, Inc. v. S. Glazer's Wine & Spirits, LLC*, 2024 WL 2785142, at *6 (N.D. Ill. May 30, 2024) (citing *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 337 (7th Cir. 2012). The Court dismissed Price's antitrust claim in the Original Complaint because Price's pleadings failed to accomplish this first step. (Dkt. 41 at 10). Construing Price's new allegations liberally from all his pleadings, Price

13

sufficiently establishes that the relevant market is rideshare services within the City of Chicago. (Dkt. 43 at ¶¶ 53-59); (Dkt. 50 at 5). *See Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 738 (7th Cir. 2004) (A relevant market has "both a product and a geographic dimension.").

Despite this, Price still does not meet the requisite standard to state a claim under Section 2 because the facts set forth in the Amended Complaint are insufficient to permit an inference that the City had any power in the relevant market to create a monopoly. *See Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 669 F. Supp. 2d 895, 901–02 (N.D. Ill. 2009) ("Dismissal is proper where the antitrust plaintiff fails to identify any facts from which the court can infer that defendants had sufficient market power to have been able to create a monopoly."). Monopoly power is the power to control prices or exclude competition. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). Price fails to allege how the City's regulation of Uber and Lyft gives the City power to control prices or exclude competition. Price states that the City "facilitates" a monopoly by allowing Uber and Lyft to share driver data and exclude drivers from the market. (Dkt. 43 at ¶ 54). He also asserts that TNP Rule 1.10 allows established rideshare companies to "control the driver pool" and "creates a barrier to entry" for new companies. (*Id.* at ¶ 57). These allegations, even if true, do not assert that the City controls rideshare prices or manipulates competition among drivers or companies through its TNP Rules. At most, these are allegations that the rideshare companies, not the City, are engaging in anticompetitive behavior by sharing driver data and excluding or deactivating drivers. Once again, Price's grievances are with the rideshare companies, not the City. Accordingly, Price's antitrust claims are dismissed without prejudice.[2]

---

[2] The City also makes a state-action immunity argument in its Motion. (Dkt. 47 at 9-10). Because the Court dismisses Price's claim on the merits, it need not evaluate the City's argument.

## VI. State Law Claims

Price's remaining claims are state law claims: intentional infliction of emotional distress, defamation, tortious interference with business relationships, and negligence. Until and unless Price succeeds in stating a federal claim, the Court declines to exercise supplemental jurisdiction over the state law claims and dismisses them without prejudice. 28 U.S.C. § 1367(c)(3). *See Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010) ("Ordinarily, when a district court dismisses the federal claim conferring original jurisdiction before trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367(c)(3)."). *See also Home Builders Ass'n of Greater Chicago v. City of Chicago*, 213 F. Supp. 3d 1019, 1033 (N.D. Ill. 2016) (dismissing state law claims without prejudice where plaintiffs failed to sufficiently plead federal claims).

Finally, given Price's repeated pleading deficiencies, the City asks that the Amended Complaint be dismissed with prejudice. (Dkt. 47 at 4, 15). The Court declines to do so. "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) (emphasis in original). This strong presumption, together with Price's increased efforts to support his allegations, afford him another chance to amend his complaint. Price is also proceeding pro se; holding him to professional-lawyer standards of pleading would be unfair and contrary to the spirit of the long-established rule that pro se complaints "are held to less stringent standards than formal pleadings drafted by lawyers." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

## **CONCLUSION**

15

For the reasons set forth above, the City's Motion to Dismiss [47] is granted without prejudice. The Amended Complaint [41] is dismissed with leave to refile.

Date: October 28, 2025

_____
Virginia M. Kendall
United States District Judge